UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


KEITH JAMES SEXTON,

     Plaintiff,

v.                              Case No. 5:15cv109-MW/CJK

ERIC FUTCH, et al.,

     Defendants.

_____/

REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court on defendants Futch and Starcher's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Doc. 25).[1]  Defendants argue: (1) plaintiff failed to exhaust the Bureau of Prisons' ("BOP") administrative remedy process; and (2) plaintiff cannot establish a First Amendment retaliation claim.  Plaintiff failed to respond to defendants' motion.  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  After careful consideration of the record, the parties' submissions, and the relevant law, the undersigned recommends that summary judgment be granted on plaintiff's

_____

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

retaliation claims against Starcher and that the retaliation claim against Futch be dismissed without prejudice because plaintiff failed to exhaust his administrative remedies.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Keith James Sexton, proceeding *pro se* and *in forma pauperis*, initiated this *Bivens*[2] action on May 15, 2015.  (Doc. 1).[3]  At the time, plaintiff was a prisoner at the Federal Correctional Institution in Marianna, Florida ("FCI-Marianna").  (*Id.*, p. 2).  He has subsequently been released from custody.  (Doc. 25-1, p. 2).  The amended complaint names two employees of FCI-Marianna as defendants: Nurse Eric Futch and Lieutenant Amie Starcher.  (Doc. 12, p. 1-2).  The complaint alleges Futch retaliated against plaintiff for pursuing a civil rights claim by fabricating a disciplinary report that resulted in the loss of plaintiff's pain medication.   Similarly, plaintiff asserts Starcher retaliated against him by: (1) falsifying a disciplinary report that resulted in the loss of good-conduct time; and (2) placing plaintiff in protective custody after fabricating the existence of a threat from another inmate.  (*Id.*, p. 6-7).  Based on the foregoing, plaintiff alleges Futch and

---

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) (recognizing an implied cause of action for damages against federal officers alleged to have violated a citizen's constitutional rights).

[3] Under the "prison mailbox rule," a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988).

Case No. 5:15cv109-MW/CJK

Starcher violated his First Amendment rights. (*Id.*, p. 8). For relief, he seeks $1,500,000 in damages. (*Id.*).

On March 15, 2016, the defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Doc. 25). The court issued an order on March 17, 2016, advising plaintiff to respond to defendants' motion by April 18, 2016. (Doc. 26). Plaintiff did not file a response.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* An issue is "genuine" if the record taken as a whole

could lead a rational fact finder to find for the non-moving party. *Id*. Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

Although plaintiff failed to respond to defendants' motion for summary judgment, the court is obligated to examine the sufficiency of the motion. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.,* 363

F. 3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").  "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.*

FACTS

The factual matters pertinent to the resolution of the motion are drawn from plaintiff's amended complaint (doc. 12) and the evidence in the summary judgment record (doc. 25-1).  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).  Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff."  *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).  Nevertheless, what are stated below as "facts" for purposes of summary judgment review may not be the actual facts.  *Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

While incarcerated, plaintiff filed a lawsuit in February 2014 alleging personnel at FCI-Marianna provided him with constitutionally inadequate medical care.  (Doc. 12, p. 6); *see Sexton v. Eichenlaub, et. al.,* No. 5:14cv38-RH/GRJ (N.D. Fla.).  Plaintiff named neither Futch nor Starcher as defendants in the suit.  In the

sworn complaint, plaintiff maintains he "informed Futch and others [in May 2014] that the court had finally accepted the case[.]"  (Doc. 12, p. 6).  On May 31, 2014, Futch wrote plaintiff a disciplinary report for "Misusing Authorized Medication."  (*Id.*; doc. 25-1, p. 67).  According to the report, Futch observed plaintiff "cheeking"[4] his medication.  (Doc. 12, p. 6; doc. 25-1, p. 67-68, 70).  As a result, plaintiff lost his pain medication for five months.  (Doc. 12, p. 6).  Initially a disciplinary committee found plaintiff guilty of the infraction (doc. 25-1, p. 70), but as a result of plaintiff's appeal the charge was expunged for "lack of evidence."  (Doc. 12, p. 6; doc. 25-1, p. 26-27, 82).

On November 26, 2014, Starcher wrote plaintiff a disciplinary report for using another inmate's email account to message an individual on plaintiff's approved list of contacts.  (Doc. 12, p. 7; doc. 25-1, p. 48-49, 56).  A discipline hearing officer found plaintiff guilty of the offense and, accordingly, plaintiff lost twenty-seven days of good-conduct time.[5]  (Doc. 25-1, p. 52-55).

---

[4] "'Cheeking' is a term used to describe an inmate who pretends to swallow his medication but instead keeps it hidden in his or her mouth until it can be removed and stored for later use."  (Doc. 25-1, p. 68).

[5] During the disciplinary proceedings, plaintiff admitted he used another inmate's email account. (Doc. 25-1, p. 52-55, 57).  In the complaint, however, plaintiff appears to suggest he is innocent of the charged infraction because he was at work on November 26, 2014, at 8:50 a.m.  (Doc. 12, p. 7).  Although the disciplinary report was written on November 26, the messages that resulted in the report were sent on November 13 and 14.  (Doc. 25-1, p. 52, 56, 60).

On February 6, 2015, Starcher placed plaintiff in the Special Housing Unit ("SHU") after receiving information that plaintiff would be assaulted for stealing another inmate's property.  (Doc. 12, p. 7; doc. 25-1, p. 49, 63).  Starcher informed plaintiff that the threat "came from a Mexican gang."  (Doc. 12, p. 7).  Plaintiff asserts that "none of the threat allegations were true" and "[t]his gang member was eventually in same rec cage with plaintiff many times."  (*Id.*).  In the complaint, plaintiff claims Starcher spoke with him in the SHU in March 2015 and stated, "I bet you'll think about it next time you sue somebody."  (*Id.*).

DISCUSSION

First Amendment

Defendants argue plaintiff cannot show they retaliated against him for pursuing a civil rights action.  "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (*citing Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)).  An inmate is considered to be exercising his First Amendment speech rights when he files lawsuits concerning the conditions of his confinement. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).  To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary

firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "The causal connection inquiry asks whether the defendants were subjectively motivated to discipline because [the inmate] complained of some of the conditions of his confinement." *Id.* at 1278 (*citing Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999)). Once the plaintiff establishes "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendants." *Id.* (*quoting Thaddeus-X*, 175 F.3d at 399). "If the defendant[s] can show [they] would have taken the same action[s] in the absence of the protected activity, [they are] entitled to prevail on . . . summary judgment." *Id.*

Plaintiff alleges defendant Futch retaliated against him for filing the February 2014 lawsuit by issuing the disciplinary report for Misusing Authorized Medication. (Doc. 12). Plaintiff contends defendant Starcher retaliated by issuing the disciplinary report for abuse of email privileges and placing plaintiff in the SHU. (*Id.*). Defendants claim plaintiff cannot establish a causal connection between his protected speech and the defendants' actions because neither Futch nor Starcher was aware of the February 2014 lawsuit. (Doc. 25, p. 14); *see Farrow*, 320 F.3d at 1248-49 (affirming grant of summary judgment on retaliation claim when alleged retaliator attested in affidavit that she had no knowledge of an inmate's protected speech).

Futch submitted a declaration stating he did not know about the February 2014 lawsuit when he wrote the disciplinary report for Misusing Authorized Medication. (Doc. 25-1, p. 67). Plaintiff, however, specifically stated in the amended complaint that he informed Futch the lawsuit had been "accepted" a few days before Futch issued the disciplinary report. (Doc. 12, p. 6). Because the facts must be viewed in the light most favorable to the nonmoving party, plaintiff has established that Futch knew about the lawsuit at the time Futch wrote the disciplinary report. In addition, the temporal proximity between the two events suggests a causal connection. *See Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) ("[A]ffidavits established, among other things, that [the plaintiff] and other inmates were transferred immediately after filing lawsuits and/or grievances[.] . . . When viewing the evidence, including the affidavits, in the light most favorable to [the plaintiff], he sufficiently established that one could conclude that the protected conduct was a motivating factor behind the [retaliation].") ; *Akins v. Fulton Cty., Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005) (holding that a "close temporal proximity between [a public employee's speech] and [a defendant]'s actions suggest[ed] a causal relationship"); *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) ("[E]vidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive."). Summary judgment on the retaliation claim against Futch, therefore, is not appropriate because: (1) plaintiff's February

2014 lawsuit constitutes protected speech; (2) the issuance of a disciplinary report that results in the loss of pain medication is an adverse action that would likely deter a person of ordinary firmness from engaging in such speech; and (3) for summary judgment purposes, the facts do not refute a causal connection between the retaliatory action and the protected speech.

Whether defendant Starcher was aware of the February 2014 lawsuit before engaging in the alleged retaliation presents a more difficult question. Like Futch, Starcher submitted a declaration disclaiming any knowledge of the lawsuit. (Doc. 25-1, p. 49). Plaintiff has presented no evidence that he ever told Starcher about the litigation. Plaintiff says after he was placed in the SHU, Starcher approached his cell in March 2015 and, during the course of a conversation, stated, "I bet you'll think about it next time you sue somebody." (Doc. 12 p. 7). The import of this statement is unclear. Although it demonstrates Starcher knew plaintiff had sued someone, it does not establish Starcher learned of the lawsuit before writing the November 26, 2014 disciplinary report for abuse of email privileges or before placing plaintiff in the SHU on February 6, 2015. In addition, plaintiff has not provided the context in which the statement was made. Based on the ambiguous nature of Starcher's statement and the fact it was made a considerable amount of time after the allegedly retaliatory actions, plaintiff has failed to produce sufficient evidence from which a reasonable jury could find that Starcher "was subjectively

motivated to discipline the plaintiff for exercising his First Amendment rights."
*Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quotation marks omitted).

Even assuming plaintiff could establish a causal connection between the 2014 lawsuit and Starcher's actions, his retaliation claims against Starcher fail nonetheless.  The disciplinary report written by Starcher cannot form the basis of a retaliation claim because plaintiff was found guilty of the charged infraction and that finding has not been overturned.  *See O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) ("If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report.").  The defendants' evidence shows plaintiff was afforded due process during the disciplinary proceedings.  He received advance written notice of the charge against him (doc. 25-1, p. 52, 57), he was allowed—but declined—to call witnesses and present evidence (doc. 25-1, p. 52, 56-57), and he was provided with a written statement summarizing the evidence relied on and the reasons for the disciplinary action (doc. 25-1, p. 55); *see O'Bryant*, 637 F.3d at 1213 (Due process requires that prisoners receive: "(1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3)

a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action.") (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).  Furthermore, ample evidence supported the disciplinary finding, including the reporting officer's statement, the printout of the email exchange, and plaintiff's admission of guilt.  (Doc. 25-1, p. 52-55); *see Superintendent v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").  Plaintiff, therefore, may not maintain a retaliation claim based on the disciplinary report written by Starcher.

With respect to plaintiff's placement in protective custody, the undisputed evidence establishes Starcher would have placed plaintiff in the SHU regardless of his protected speech.  *See Smith*, 532 F.3d at 1278 ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on . . . summary judgment.") (*quoting Thaddeus-X*, 175 F.3d at 399).  FCI-Marianna's SIS department received information indicating plaintiff "was going to be assaulted for stealing another inmate's property."  (Doc. 25-1, p. 49).  After the investigating officer informed Starcher about the threats against plaintiff, Starcher concluded plaintiff "was likely to be assaulted by other inmates and that he needed to be placed in the SHU for his own protection."  (*Id.*).  Although

plaintiff speculates that "none of the threat allegations were true" (doc. 12, p. 7), the SIS Inmate Investigative Report—which was not completed by Starcher—includes interviews with plaintiff and other inmates and found a threat did exist.  (*Id.*, p. 62-65).  The investigator ultimately concluded that plaintiff should be "transferred to a facility commensurate to his security and programming needs due to the threat of [plaintiff] getting assaulted."  (*Id.*, p. 65).  Thus, the record is clear—regardless of plaintiff's protected speech, Starcher would have placed plaintiff in protective custody due to existence of a threat to his safety.  Starcher's decision to place plaintiff in the SHU was objectively reasonable and supported by the conclusion and recommendation of the independent investigator.  Summary judgment, therefore, is appropriate on both of plaintiff's retaliation claims against defendant Starcher.[6]

Exhaustion

Defendants Futch and Starcher also assert plaintiff's claims should be dismissed because plaintiff failed to properly exhaust his administrative remedies.

---

[6] Defendants also assert they are protected by the doctrine of qualified immunity.  (Doc. 25, p. 16-17); *see Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) ("We focus on two questions: first, . . . whether there is an underlying constitutional violation, [and] second, . . . whether the law the public official is alleged to have violated was clearly established at the time of incidents giving rise to the suit.") (quotations and citations omitted).  Defendants argue that because they knew nothing of plaintiff's 2014 lawsuit, they could not have known "that their actions might be considered 'retaliatory' or that they were committing some violation."  (Doc. 25, p. 17).  As this argument is merely a reformulation of the claim that the defendants did not violate plaintiff's First Amendment rights, an independent discussion of qualified immunity is not warranted.  *See Hicks v. Ferrero*, 241 F. App'x 595, 598-99 (11th Cir. 2007) (finding a prisoner's right to be from retaliation is a clearly established constitutional right; "We concluded as early as 1989—well before this decision was made—that a prisoner's First Amendment free speech rights are violated when prison officials retaliate against him or her for filing a grievance.").

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary damages. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). The exhaustion requirement applies to *Bivens* actions. *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (holding that prisoner asserting *Bivens* claim must exhaust available administrative remedies); *Zolicoffer v. Scott*, 55 F.Supp.2d 1372, 1375 (N.D. Ga. 1999), *aff'd*, 252 F.3d 440 (11th Cir. 2001).

Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). "[T]he PLRA exhaustion requirement requires proper

exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (emphasis added).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The grievance procedure promulgated by the BOP requires an inmate to:  (1) file an informal grievance; (2) file a formal written complaint with the institution by submitting a BP-9 Request for Administrative Remedy; (3) file an appeal to the Regional Director by submitting a BP-10 Regional Administrative Remedy Appeal; and (4) file an appeal to the General Counsel for the BOP by submitting a BP-11 Central Office Administrative Remedy Appeal.  28 C.F.R. § 542.10-542.15.  Each of these steps is generally required to satisfy the exhaustion requirement.  *Id.*

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving.  *See Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").  In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The court held that the

defense of failure to exhaust should be treated as a matter in abatement.  *Id*. at 1374.

"This means that procedurally the defense is treated 'like a defense for lack of

jurisdiction,' although it is not a jurisdictional matter."  *Turner v. Burnside*, 541 F.3d

1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374).  Because exhaustion

is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as

such if raised in a motion for summary judgment."  *Bryant*, 530 F.3d at 1374-75

(citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies

involves two steps.  *Turner*, 541 F.3d at 1082.  First, the court looks to the factual

allegations in the defendants' motion, and those in the plaintiff's response.  *Id*.  If

they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the

defendant is entitled to have the complaint dismissed for failure to exhaust

administrative remedies, it must be dismissed."  *Id*.; *see also Bryant*, 530 F.3d at

1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's

allegations are assumed to be true, "the court proceeds to make specific findings in

order to resolve the disputed factual issues related to exhaustion."  *Turner*, 541 F.3d

at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376).  "The defendants bear the burden

of proving that the plaintiff has failed to exhaust his available administrative

remedies."  *Id*.  Upon making findings on the disputed issues of fact, the court then

decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Because summary judgment is appropriate on plaintiff's claims against Starcher, the remaining issue is whether plaintiff exhausted his administrative remedies with respect to Futch's issuance of the May 31, 2014 disciplinary report for Misusing Authorized Medication.  Defendants assert plaintiff did not complete the administrative remedy process concerning the report because he never properly filed an appeal at the BP-11 level.  (Doc. 25, p. 11).  Plaintiff submitted administrative remedies concerning the report at the BP-9 and BP-10 levels.  (Doc. 25-1, p. 3-4, 9, 26-29).  The BP-10 appeal alleged the May 31, 2014 disciplinary report and discontinuation of his medication were retaliatory.  (*Id.*, p. 26).  Plaintiff requested that the disciplinary report be expunged, his medication be returned, and staff be prevented from retaliating.  (*Id.*, p. 26-27).  In response, the regional director "decided to remand the case back to the institution for a rehearing." (*Id.*, p. 27).  The response also expressly indicated that if plaintiff was dissatisfied with the response, he could appeal to the Office of General Counsel. (*Id.*).  Plaintiff attempted to submit an appeal at the BP-11 level, but the appeal was rejected and plaintiff chose not to refile. (*Id.*, p. 4, 9).

On August 7, 2014, plaintiff began a new round of grievances concerning Futch's retaliatory disciplinary report and the discontinuation of his pain medication.

(*Id.*, p. 45).   Plaintiff completed the BP-9 and BP-10 levels of the administrative remedy process, but never attempted an appeal at the BP-11 level.   (*Id.*, p. 4, 10, 43-46).   Plaintiff, therefore, never successfully filed a grievance appeal at the BP-11 level.   Because the PLRA requires proper exhaustion of all available administrative remedies, plaintiff's retaliation claim against defendant Futch should be dismissed without prejudice.[7]   *See Booth v. Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (holding prisoner must complete any prison administrative remedy process, even when seeking only monetary damages which are not available through the grievance process); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) ("untimely grievance does not satisfy the exhaustion requirement of the PLRA"); *Alexander*, 159 F.3d at 1325 ("the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA").

---

[7] Because plaintiff was released from custody and may refile his claim without being subject to the PLRA's exhaustion requirement, dismissal without prejudice is appropriate. *See Cox v. May*er, 332 F.3d 422, 424-28 (6th Cir. 2003) (directing district court to dismiss complaint without prejudice when prisoner filed suit without exhausting and was released from custody while case was pending); *Davis v. Gresko*, No. 5:15cv5-MW/GRJ, 2015 WL 5012611 at *3 (N.D. Fla. July 20, 2015) *report and recommendation adopted by* 2015 WL 4976538 (N.D. Fla. Aug. 20, 2015) (addressing defendants' motion for summary judgment and noting that "[b]ecause exhaustion is treated as a matter in abatement and 'does not deal with the merits,' Defendants are not entitled to dismissal with prejudice solely on the grounds of exhaustion.") (*quoting Bryant*, 530 F.3d at 1374-75).

Case No. 5:15cv109-MW/CJK

CONCLUSION

Applying the correct standard, the undisputed evidence shows plaintiff cannot establish a First Amendment retaliation claim against defendant Starcher for the November 26, 2014 disciplinary report or plaintiff's placement in SHU.  In addition, plaintiff failed to exhaust his available administrative remedies with respect to the retaliation claim against defendant Futch.  Plaintiff's First Amendment claim against Futch, therefore, should be dismissed without prejudice.

Accordingly, it is respectfully RECOMMENDED:

1.      That defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (doc. 25) be GRANTED to the extent indicated below.

a.      That plaintiff's First Amendment retaliation claim against defendant Futch be DISMISSED WITHOUT PREJUDICE for plaintiff's failure to exhaust his administrative remedies.

b.      That summary judgment be GRANTED in favor of defendant Starcher on plaintiff's First Amendment retaliation claims.

2.      That the clerk be directed to close the file.

At Pensacola, Florida, this 2nd day of August, 2016.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITEDSTATESMAGISTRATEJUDGE**

Case No. 5:15cv109-MW/CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.